*Tagged opinion*



**ORDERED in the Southern District of Florida on July 30, 2024.**

**Laurel M. Isicoff, Judge**
**United States Bankruptcy Court**

---

## UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF FLORIDA
Miami Division
www.flsb.uscourts.gov

In re:

NEXGENESIS HOLDINGS LTDA.,
GENCOMM FINANCIAL SERVICES
DO BRASIL LTDA., GENCOMM INTERNET
SERVICES DO BRASIL LTDA., and      Case No.: 22-14043-BKC-LMI
GENCOMM LOGISTICS SERVICES DO
BRASIL LTDA.,      Chapter 15

    Debtors in a Foreign Proceeding.
_____/

### MEMORANDUM OPINION DENYING MOTION FOR ORDER
### RECOGNIZING THE PRELIMINARY ASSET FREEZE
### ENTERED BY THE BRAZILIAN BANKRUPTCY COURT

This matter came on for hearing on March 28, 2024 (the "Hearing") upon

the *Motion for Order Recognizing the Preliminary Asset Freeze Entered by the*

*Brazilian Bankruptcy Court* (ECF #15) (the "Motion") of Expertisemais Serviços

Contábeis e Administrativos Ltda. (the "Foreign Representative"), as judicial

administrator of the bankruptcy estate of Nexgenesis Holdings Ltda., Gencomm

Financial Services do Brasil Ltda., Gencomm Internet Services do Brasil Ltda., and Gencomm Logistics Services do Brasil Ltda. (jointly, the "Debtors"), and the objections ("Objections") thereto filed by Rakuten USA Inc. ("Rakuten USA") and Reginald Rasch ("Rasch," and together with Rakuten USA, the "Rakuten Objectors") (ECF #36), and TOG Brazil Holdings Inc. ("TOG Brazil") and Mike Hahn ("Hahn," and together with TOG Brazil, the "TOG Objectors," and jointly with the Rakuten Objectors, the "Objectors") (ECF #35). The Court has considered the Motion and its respective attachments, including the Declaration of Thiago Braga Junqueira (ECF #39) (the "Junqueira Declaration"), the Objections filed by the Objectors (ECF ##35-36), including the declarations of Stephen Siu and Reginald Rasch, and the arguments of counsel at the Hearing. For the reasons set forth below, the Motion is DENIED.

## **BACKGROUND**

This case (the "Chapter 15 Case") is an ancillary proceeding filed before this Court under Chapter 15 of the U.S. Bankruptcy Code for the purpose of rendering assistance to the insolvency proceedings of the Debtors pending in Brazil (together with appeals relating thereto, the "Brazilian Proceeding"). The Court previously recognized the Brazilian Proceeding as a foreign main proceeding under Chapter 15 of the Bankruptcy Code.

In its Motion, the Foreign Representative seeks recognition of the Ex Parte Order (defined hereinafter) entered in Brazil and enforcement of indefinite, joint and several asset seizures of nearly $29 million USD against each of fifteen (15) Respondents (defined hereinafter) (both corporate entities and individuals), including the Objectors.  The Motion is contested by the Objectors on several

2

bases, including that: (a) the Foreign Representative has failed to demonstrate the requisite minimum contacts between the Objectors and Brazil necessary for the exercise of personal jurisdiction under fundamental procedural and substantive due process principles; (b) under Supreme Court precedent, federal courts cannot issue pre-judgment attachments to secure payment of a potential money judgment in ongoing litigation; (c) federal courts generally do not extend comity to ex parte foreign orders that are not final adjudications on the merits; and (d) recognition of the Ex Parte Order is not the type of relief a United States bankruptcy trustee could secure here.

After considering the competing arguments and respective legal authorities advanced, the Court denies recognition and enforcement of the Ex Parte Order pursuant to 11 U.S.C. §§1506, 1507, 1509,  and  1521 as such relief is inconsistent with principles of comity, is not relief which a bankruptcy trustee could obtain, and would be manifestly contrary to U.S. public policy.

## PROCEDURAL HISTORY AND FACTS

### I.   Procedural History

On May 23, 2022, the Foreign Representative filed the Chapter 15 petition and motion seeking recognition of the Brazilian bankruptcy proceedings of the Debtors, under Chapter 15 of the United States Bankruptcy Code.  By order dated June 17, 2022, this Court granted that motion.  Over a year later, on October 19, 2023, the Foreign Representative filed the Motion. The Court conducted the Hearing on the Motion on March 28, 2024.

On March 22, 2024, the Objectors filed their respective Objections to the Motion.  As part of and together with their Objection, the Rakuten Objectors filed

the declarations of Stephen Siu and Reginald Rasch, setting forth verified statements in support of their arguments regarding  the lack of minimum contacts of Rakuten USA and Rasch, respectively, with Brazil. The Foreign Representative did not file a reply.[1]

## II.    The Objectors and Their Lack of Minimum Contacts

### a.  The Rakuten Objectors and Their Declarations

Rakuten USA, a Delaware corporation with its principal office in San Mateo, California, provides technological services respecting a wide variety of businesses in the United States. Rakutan USA asserts, without dispute, that since its formation in 2000, Rakuten USA has not conducted business in Brazil and that it does not have any employees, assets, locations, addresses or sales or marketing presence in Brazil and does not target customers in Brazil.   Until October 2019, Rakuten USA asserts without dispute that it owned less than a 0.01% equity interest in a single Brazilian limited liability company, Rakuten Brazil Holdings Ltda. ("Rakuten Brazil Holdings").   Rakuten USA also asserts without dispute that it did not manage, direct or control that entity's operations. In October 2019, Rakuten USA sold its equity interest in Rakuten Brazil Holdings.[2] In turn, Rakuten Brazil Holdings sold its equity interest in the Debtors, for which the Foreign Representative is the bankruptcy administrator

---

[1] The Foreign Representative filed a *Notice of Filing Proof of Service* (ECF #38) and the Junqueira Declaration, both of which address the procedure by which the Ex Parte Order was obtained and the status of interlocutory appeals in Brazil of the Ex Parte Order.  Neither document otherwise directly refuted any of the facts set forth in the Objections or the Rakuten Objectors' declarations, either generally or specifically with regard to minimum contacts.

[2] Rakuten USA claims that it previously had been made a minority shareholder in Rakuten Brazil Holdings to comply with a since-repealed Brazilian law requiring two shareholders for any Brazilian limited liability company.

in Brazil. Rakuten USA asserts without dispute that it did not receive any proceeds or distributions on account of the transfer of its equity interest or the equity interest transfer of Rakuten Brazil Holdings involving the Debtors, and that Rakuten USA is not and never was the Debtors' shareholder, creditor, or asset transferee.

From September 2005 to May 2021, Rasch was an in-house attorney with Rakuten USA. There does not appear to be any dispute that Rasch does not own, and he has never owned, any shares of equity ownership in Rakuten USA or any entity controlled by Rakuten USA or RGI[3], except for shares of shares of RGI restricted stock awarded to him as an employee participating in RGI's stock option program available to RGI's United States based employees.

Rasch also asserts without dispute that he has never resided in Brazil. He does not maintain and has not ever maintained regular contact with Brazil. He does not own, possess, lease, use, control, or maintain any real or tangible property in Brazil, and he has never owned, possessed, leased, used, controlled, or maintained any real or tangible property in Brazil, other than limited cash on hand customarily held by a tourist traveling in Brazil. He has not paid taxes of any kind to any governmental entity in Brazil because he has had no income of any kind in Brazil. In his individual capacity, he has not entered any contracts or agreements in Brazil.

**b. The TOG Objectors**

---

[3] Rakuten USA is a subsidiary of Rakuten Group, Inc. ("RGI"), a Japanese corporation.

TOG Brazil is a Delaware corporation and affiliate of Ten Oaks Group ("TOG"), an investment office.[4]  TOG Brazil was incorporated on October 8, 2019. Hahn, a California resident, is the co-founder of TOG and is a shareholder of TOG Brazil. TOG Brazil purchased an interest in the Debtors from Rakuten Brazil Holdings in 2019.  Hahn has asserted without dispute that he never directly owned an interest in the Debtors, although it is also not disputed that he signed all documents relating to the sale on behalf of TOG Brazil.

### III.    The Brazilian Bankruptcy, Veil Piercing Action, and the Ex Parte Order

On February 3, 2020, after an unsuccessful turnaround effort, the Debtors filed a request for joint judicial reorganization before the 1st Special Lower Court for Judicial Reorganization and Bankruptcy in the Judicial District of São Paulo, Brazil (the "Brazilian Bankruptcy Court") which was granted on February 7, 2020.  On April 5, 2020, the Debtors filed a petition to convert the judicial reorganization to a liquidation proceeding (the "Brazilian Proceeding") and, on April 13, 2020, the Brazilian Bankruptcy Court granted the Debtors' petition. The Foreign Representative is the judicial administrator for the Debtors.

On December 15, 2021, the Foreign Representative filed an adversary proceeding (the "Veil Piercing Action") in the Brazilian Bankruptcy Court seeking to pierce the corporate veil and for damages against fifteen respondents, including the Objectors (collectively, the "Respondents").[5]  On December 15,

---

[4] The TOG Objectors stated that TOG specializes in carve-out transactions pursuant to which TOG, or its affiliates, like TOG Brazil, acquires non-core lines of business from corporate sellers in order to implement a turnaround strategy.

[5] The Respondents are: (1) RGI, (2) Masayuki Hosaka, (3) Makoto Watanabe, (4) Rakuten USA, (5) Rasch, (6) Luiz Carlos Giannini Tanisho, (7) Renê Toshiro Abe, (8) TOG Brazil, (9) Hahn, (10)

2021, the Foreign Representative filed an ex parte 95-page initial pleading (the "Initial Pleading") in the Veil Piercing Action alleging mismanagement of the Debtors, self-dealing, and other claimed misdeeds.  The Foreign Representative asserts that the Initial Pleading sets forth "detailed facts about mismanagement," "self-dealing," and "fail[ure] to exercise reasonable diligence in perform[ance]" of management's duties.  The TOG Objectors assert in their Objection that Hahn is never mentioned, much less discussed, in the Initial Pleading and the Foreign Representative does not allege that Hahn himself committed a bad act or secreted funds from the Debtors.[6]

On March 31, 2022, the Brazilian Bankruptcy Court granted an ex parte pre-judgment asset freeze order (the "Ex Parte Order").  The Ex Parte Order provides for a preliminary asset freeze injunction against the Objectors and other Respondents. The Ex Parte Order enjoins various asset transfers by the Objectors. The Ex Parte Order does not require the Foreign Representative to post a bond for the Ex Parte Order to take effect.  The Ex Parte Order purports to freeze all cash and other assets of, among other entities, the Objectors, wherever situated, up to R\$141,143,139.86 (or \$28,950,242.95 USD as of November 7, 2023).  There are no findings in the Ex Parte Order with respect to Hahn or Rasch individually.

The Ex Parte Order was entered in the Veil Piercing Action in furtherance of litigation claims for damages against the Respondents.  The Foreign

---

Elaine Zucchi, (11) Denis Smetana Lopes, (12) Fernanda Agresta Santos, (13) Luiz Celso Meissner Baptista, (14) Rodrigo Panachi, and (15) Luis Henrique Pelizon Loureiro.

[6] The Foreign Representative did not attach a copy of the Initial Pleading or a translation thereof to the Motion.

Representative has informed the Court that the Veil Piercing Action is one under Article 50 of the Civil Code or Articles 82 and 82-A of the Bankruptcy and Judicial Reorganization Law and "has the effect of holding a non-debtor liable for damages." The Ex Parte Order does not make any determination that the frozen assets constitute property of the Debtors' bankruptcy estate in Brazil. Instead, the Ex Parte Order acknowledges that the frozen assets are Respondents' assets. According to the Foreign Representative, the effect of the Ex Parte Order "is to make the Respondents' assets, inalienable, but that 'does not deprive the owner [i.e., the Respondents] from domain over the assets."

The Ex Parte Order was not entered after a full trial. It was granted upon an ex parte request without service or notice upon any Respondent. The Ex Parte Order states: "it is necessary to state that the analysis and conclusions of this decision are preliminary, as is often the case in any assessment of an ex parte request for interlocutory relief. The conclusions, therefore, will be confirmed (or not) after due evidentiary stage." The translations of both the Ex Parte Order and the order issued by the Brazilian appellate court (the "Appellate Order") attached to the Motion confirm this. Further, the Appellate Order states that the Ex Parte Order does "not result in irreversibility against the appellant. If, in the end, it is found that they are not responsible for the fraudulent acts that are being imputed thereto, the inalienability shall be canceled, without any loss."

Notwithstanding the preliminary appeal taken from the Ex Parte Order, the Ex Parte Order is subject to further appeals. The Brazilian Bankruptcy Court has not entered any final judgment against any Respondent.

## IV.    The Hearing

At the Hearing, the Court inquired of counsel for the Foreign Representative if the Foreign Representative had made any allegations of minimum contacts specific to the Objectors in the Initial Pleading that would support the exercise of specific jurisdiction over them in Brazil to issue the injunction.  The Court inquired "what claims against [the Objectors] are alleged in the complaint such that it would be appropriate to have an injunction issued" and admonished that "[i]f there are no allegations in the complaint for which it would be appropriate to issue the injunction order against these four objectors, then we're done."[7]

The Court also explained to counsel for the Foreign Representative that if the Initial Pleading *did not* have allegations specifically against the Respondents, then the Foreign Representative should submit an order denying the Motion, which is what the Foreign Representative did.  Therefore, the Court can only presume that the Initial Pleading does not contain any allegations sufficient to issue an injunction against the Objectors.

## CONCLUSIONS OF LAW

## V.    Jurisdiction and Venue

This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. §157(b)(2)(P).  Venue is proper in this Court under 28 U.S.C. §1410.

## VI.    The Ex Parte Order is Not Entitled to Recognition under Chapter 15

---

[7] Transcript of  March 28, 2024 Hearing (ECF #45) ("Tr.") 66:14-17, 66:24-25-67:1-2.

9

This Court previously granted an order recognizing the Brazilian Proceeding pursuant to 11 U.S.C. §1517; but that does not mean the Foreign Representative is relieved of its obligation to establish that other orders from the Brazilian Bankruptcy Court are entitled to enforcement, including the Ex Parte Order. This Court's determination that comity should be granted to the Brazilian Proceeding does not "mandate comity with respect to all acts in the foreign proceeding without regard to the satisfaction of the other provisions of chapter 15 that pertain to comity." *In re OAS S.A.*, 533 B.R. 83, 99 (Bankr. S.D.N.Y. 2015). It remains the burden of the Foreign Representative to show that comity should be afforded to other orders of the Brazilian Bankruptcy Court, including the Ex Parte Order.

Section 1509 of the Bankruptcy Code provides that if a court grants recognition under section 1517, then the court shall grant comity or cooperation to the foreign representative. 11 U.S.C. §1509(b). But the reference to comity in section 1509 of the Bankruptcy Code "does not equate the foreign representative with the foreign court or the foreign proceeding." *In re OAS S.A.*, 533 B.R. at 99; *In re Cozumel Caribe, S.A. de C.V.*, 482 B.R. 96, 109 (Bankr. S.D.N.Y. 2012) ("While this provision [Section 1509(b)] mandates courtesy and respect for the foreign proceeding, consistent with the statement of purpose of chapter 15 and its international origin, it does not mandate relief. The foreign representative must still make a case that the relief it seeks is warranted.") (quoting 8 COLLIER ON BANKRUPTCY ¶ 1509.02)).

The Foreign Representative seeks recognition of, or as to avoid confusion with recognition under Chapter 15, asks the Court to grant comity to, the Ex

Parte Order pursuant to sections 1507(a) and 1521(a)(7) of the Bankruptcy Code. Section 1507(a) provides that "[s]ubject to the specific limitations stated elsewhere in this chapter the court, if recognition is granted, may provide additional assistance to a foreign representative under this title or under other laws of the United States." 11 U.S.C. §1507(a).  Pursuant to section 1507, the court may grant "additional assistance" provided that such assistance is consistent with the principles of comity and satisfies the fairness considerations set forth in section 1507(b).  *Id.*

Section 1521(a) of the Bankruptcy Code provides that, following the recognition of a foreign proceeding, and "where necessary to effectuate the purpose of [chapter 15] and to protect the assets of the debtor or the interests of the creditors," a bankruptcy court may "grant any appropriate relief," including:

> (7) granting any additional relief that may be available to a trustee, except for relief available under sections 522, 544, 545, 547, 548, 550, and 724(a).

11 U.S.C. §1521(a).  The Foreign Representative seeks relief pursuant to section 1507(a) and the "catch-all" trustee provision of section 1521(a)(7), asking, at least initially, not only that the Court give comity to the Ex Parte Order, but also that the Court actually enforce the injunctive provisions of the Ex Parte Order.

The relationship between sections 1507 and 1521 "is not entirely clear." *In re Rede Energia S.A.*, 515 B.R. 69, 90 (Bankr. S.D.N.Y. 2014).  Courts often first consider whether the relief sought is within the specifically enumerated provisions of 11 U.S.C. §1521(a).  *In re Condor Flugdienst GmbH*, 627 B.R. 366, 374 (Bankr. N.D. Ill. 2021). If not, the court may then consider whether the request nonetheless constitutes "appropriate relief," constrained by what could

have been obtained under Chapter 15's predecessor statute, 11 U.S.C. §304.  *Id.* Only if the relief was not available under section 304 should the court then consider providing "additional assistance" under section 1507. *Id.*; *see also In re Rede Energia S.A.*, 515 B.R. at 93.

The express language of section 1521(a)(7) indicates that any "additional relief" not specifically enumerated in the preceding subsections is constrained to that which would be available to a bankruptcy trustee under the Bankruptcy Code; and the language of section 1507 makes clear that any "additional assistance" must be guided by principles of comity. Thus, whether the Ex Parte Order may be enforced by this Court under either section 1507 or section 1521(a)(7) depends on: (a) whether its enforcement is consistent with principles of comity; and (b) whether it is relief that would be available to a U.S. bankruptcy trustee.  And under either section 1507 or 1521, the relief sought is subject to the limits of section 1506 of the Bankruptcy Code, which permits a court to refuse to take an action governed by Chapter 15 if the action "would be manifestly contrary to the public policy of the United States."  11 U.S.C. §1506.

Chapter 15 is properly used as a vehicle for identifying, pursuing claims of the foreign debtor, and administering assets of the foreign debtor in the U.S. in conjunction with a foreign insolvency proceeding.  However, here the Foreign Representative asks this Court to enforce a pre-judgment attachment against *non-debtors' assets* in furtherance of unadjudicated claims for damages against those non-debtors.

**VII.**  **The Foreign Representative Failed to Establish a Basis for Recognition Founded on Principles of Comity**

### a.      Standard Governing Whether Comity is Appropriate

"Comity is a common law rule by which courts in the United States give deference to foreign judgments." *In re Neves*, 570 B.R. 420, 426 (Bankr. S.D. Fla. 2017), *aff'd*, 2019 WL 11288450 (S.D. Fla. 2019), *aff'd*, 783 F. App'x 995 (11th Cir. 2019). In *Hilton v. Guyot*, the Supreme Court held that comity is appropriate in circumstances where:

> [T]here has been opportunity for a full and fair trial abroad before a court of competent jurisdiction, conducting the trial upon regular proceedings, after due citation or voluntary appearance of the defendant, and under a system of jurisprudence likely to secure an impartial administration of justice between the citizens of its own country and those of other countries, and there is nothing to show either prejudice in the court, or in the system of laws under which it was sitting, or fraud in procuring the judgment, or any other special reason why the comity of this nation should not allow it full effect.

159 U.S. 113, 158 (1895). The Supreme Court has further explained that comity "is neither a matter of absolute obligation . . . nor of mere courtesy and good will" but is instead the "recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws." *Id.* at 163-64; *see also In re Enercons Virginia, Inc.*, 812 F.2d 1469, 1473 (4th Cir. 1987) (explaining that "in determining whether to apply comity to the Order of a foreign court of competent jurisdiction we must consider our own laws and public policy, as well as the rights of our residents under the laws of the United States.").

In the Eleventh Circuit, courts evaluate three factors to determine whether comity is warranted: "(1) whether the foreign court was competent and used 'proceedings consistent with civilized jurisprudence,' (2) whether the judgment

was rendered by fraud, and (3) whether the foreign judgment was prejudicial because it violated American public policy notions of what is decent and just." *Daewoo Motor Am., Inc. v. Gen. Motors Corp.*, 459 F.3d 1249, 1258 (11th Cir. 2006) (citing *Ungaro-Benages v. Dresdner Bank AG*, 379 F.3d 1227, 1238 (11th Cir. 2004)).   The Foreign Representative must initially show that comity is appropriate. *In re Neves*, 570 B.R. at 426.  Only after the Foreign Representative meets that burden do the Objectors have to demonstrate that the Ex Parte Order violates public policy notions of what is decent and just in order to defeat the Motion.

### b. The Foreign Representative Has Failed to Establish Minimum Contacts Over the Objectors

The Foreign Representative did not refute the detailed declarations submitted in support of the Objections demonstrating the absence of minimum contacts  and has conceded that the Initial Pleading does not contain allegations sufficient to assert jurisdiction in Brazil over the Objectors.

To determine whether a foreign court can appropriately exercise personal jurisdiction over a defendant, the foreign court must be "at a minimum in compliance with the requirements of traditional notions of fair play and substantial justice under the due process clause of the United States Constitution." *Bank of Montreal v. Kough*, 430 F. Supp. 1243, 1247 (N.D. Cal. 1977) *aff'd* 612 F.2d 467, 471 (9th Cir. 1980).  This means that an American court must not recognize any foreign exercise of jurisdiction over an American citizen or company that lacks minimum contacts with that foreign jurisdiction. Nor may an American court defer to a foreign court's disregard of the need for

minimum contacts in order to exercise jurisdiction over the non-foreign actors (as discussed further below).  As such, minimum contacts must be shown for the Objectors in order for the Court to enforce the Ex Parte Order.

At the Hearing, the Foreign Representative conceded that its basis for jurisdiction is specific jurisdiction, not general jurisdiction.  To establish specific jurisdiction, the party asserting the jurisdiction  must show that the contacts: (1) are related to the party's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being hauled into court in the forum. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462 (1985); *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1357 (11th Cir. 2013).

The Foreign Representative has failed to demonstrate that the Brazilian Bankruptcy Court made any determination that there were minimum contacts sufficient to satisfy the due process requirements to assert jurisdiction over any of the Objectors, or even that  the Brazilian Bankruptcy Court could have made any determination since there was, apparently, a complete absence of any facts alleged to support any such assertion of jurisdiction.  Nor can the Foreign Representative circumvent the requirement of sufficient allegations of minimum contacts by claiming that the appellate court determined that jurisdiction existed; since there is evidently no allegations of any minimum contacts in either the Initial Pleading or in the Ex Parte Order, the ruling by a foreign appellate court cannot cure that constitutional infirmity.

Although the Court could stop at this juncture, it is important to make clear all the reasons why the relief requested by the Foreign Representative in the Motion cannot be granted.

### c.  *Grupo Mexicano* Expressly Prohibits Pre-Judgment Attachments to Secure a Potential Money Judgment

The Ex Parte Order purports to freeze the assets of all Respondents, including the Objectors, for an indefinite period pending an adjudication of damages in civil litigation in Brazil.  The Foreign Representative's argument that the Ex Parte Order is consistent with principles of comity and constitutes pre-judgment relief that can be obtained by a bankruptcy trustee in the United States is unsupported by applicable bankruptcy law and is contradicted by Supreme Court and Eleventh Circuit precedent.

In *Grupo Mexicano de Desarrollo v. Alliance Bond Fund, Inc.* ("Grupo Mexicano"), the Supreme Court held that federal courts lack the authority to issue a preliminary injunction preventing defendants from disposing of their assets pending adjudication of a claim for money damages.  527 U.S. 308, 333 (1999).  The Supreme Court observed that, as a general historical rule, a creditor could only obtain a right to property after having obtained a judgment establishing a debt.  *Id.* at 319 (citations omitted).  As explained by the Court:

> The rule requiring a judgment was a product, not just of the procedural requirement that remedies at law had to be exhausted before equitable remedies could be pursued, but also of the substantive rule that a general creditor (one without a judgment) had no cognizable interest, either at law or in equity, in the property of his debtor, and therefore could not interfere with the debtor's use of that property.

*Id.* at 319-20.

While federal courts do have "flexible" equity jurisdiction, it is "confined within the broad boundaries of traditional equitable relief" which does not include "relief that has never been available before" and which has been "specifically disclaimed by *longstanding judicial precedent*," such as rendering a preliminary injunction to freeze assets pending a damages adjudication.  *Id.* at 322 (emphasis added).  *Grupo Mexicano* further explains that—even in the absence of the historical rule—the Supreme Court did not believe that it was "merely a question of procedure whether a person's unencumbered assets could be frozen by general-creditor claimants before their claims have been vindicated by judgment."  *Id.* at 322-23.  Instead, it determined that this question "goes to the substantive rights of all property owners."  *Id.* at 323.  The Supreme Court emphasized that "[t]he requirement that the creditor obtain a prior judgment is a *fundamental protection in debtor-creditor law*—rendered all the more important in our federal system by the debtor's right to a jury trial on the legal claim."  *Id.* at 330 (emphasis added).  *Grupo Mexicano* also observed that permitting a pre-judgment asset freeze pending an adjudication of damages would "radically alter the balance between debtor's and creditor's rights which has been developed over centuries through many laws—including those relating to bankruptcy, fraudulent conveyances, and preferences."  *Id.* at 331.

The Eleventh Circuit has consistently rejected pre-judgment attachments pending an adjudication of damages.  *See, e.g.*, *Noble Prestige Ltd. v. Galle*, 83 F.4th 1366, 1382 (11th Cir. 2023) ("[W]e have often explained that 'a court may not reach a defendant's assets unrelated to the underlying litigation and freeze them so that they may be preserved to satisfy a potential money judgment.'")

(citations omitted); *Noventa Ocho LLC v. PBD Props., LLC*, 284 F. App'x 726, 727 (11th Cir. 2008) (holding district court lacked authority to enter preliminary injunction freezing defendants' assets); *Rosen v. Cascade Intern., Inc.*, 21 F.3d 1520, 1527 (11th Cir. 1994) (holding district court lacked authority to freeze assets on behalf of securities fraud plaintiff unrelated to the underlying litigation so as to be available to satisfy a money judgment).

In this case, the Motion specifically provides that the relief requested in the Veil Piercing Action, which gives rise to the Ex Parte Order, seeks "to pierce the corporate veil and *hold Respondents liable for damages*." (emphasis added). Likewise, the Foreign Representative's supporting declaration confirms it is seeking damages: "An action to pierce the debtors' corporate veil under Article 50 of the Civil Code or Articles 82 and 82-A of the Bankruptcy and Judicial Reorganization Law *has the effect of holding a non-debtor liable for damages*." (emphasis added). Therefore, enforcement of the Ex Parte Order is not merely a matter of "procedure," but instead would violate the "substantive rights" and "fundamental protection" of the Objectors in clear violation of Supreme Court precedent under *Grupo Mexicano* and Eleventh Circuit law.

Despite the clear prohibition in *Grupo Mexicano*, the Foreign Representative argued that there was dicta in the case suggesting that bankruptcy courts have equitable powers to enforce such asset freezes under the circumstances here. The Court disagrees. Although this Court has equitable powers, such powers do not provide this Court with the power to do something forbidden to Article III courts. Regardless of whether a bankruptcy court has a superpower greater than those held by Article III courts, an attractive argument

to be sure, the Foreign Representative has not identified any set of facts that would warrant the exercise of any kind of equitable relief, let alone this extraordinary "equitable" relief.[8]

> ### d. The Foreign Representative Has Not Cited Any Case Where a Bankruptcy Trustee Was Automatically Granted an Ex Parte Pre-Judgment Attachment to Secure Money Damages from Non-Debtor Assets

Notwithstanding, the Foreign Representative argues that the relief requested in the Veil Piercing Action is similar to relief granted to a U.S. bankruptcy trustee. The Foreign Representative further claims that in "appropriate circumstances," U.S. bankruptcy courts may grant preliminary injunctions in support of such claims. It relies on two unpublished, out-of-jurisdiction bankruptcy decisions that are inapplicable here.

In *Seidel v. Warner (In re Atlas Fin. Mort., Inc.)*, No. 13-03233, ECF #36 (Bankr. N.D. Tex. Jan. 14, 2014), the trustee – unlike the Foreign Representative here – sought a pre-judgment attachment under Texas state law and Fed. R. Civ. P. 64, as incorporated by Fed. R. Bankr. P. 7064. Texas law, like Florida's, requires an affidavit establishing that the defendant is transferring, concealing, removing or disposing of property to defraud creditors, as well as establishing an obligation to pay a liquidated amount. The *Seidel* court found that the trustee

---

[8] Courts applying *Grupo Mexicano* have also recognized that granting pre-judgment relief based on a claim of monetary damages is against public policy. *See, e.g.*, *Residential Fin. Corp. v. Jacobs*, 2014 WL 682486, at *4 (S.D. Ohio 2014) (as explained "by the Supreme Court in *Grupo Mexicano* . . ., granting the requested injunctive relief would harm . . . the public interest, as creditors should be required to receive a judgment before being allowed to dictate control of the property."); *RBS Citizens, NA v. M-59 Tel. Petroleum LLC*, 2013 WL 508324, at *2 (E.D. Mich. 2013) (recognizing that an injunction pending a trial for a money judgment is "against good public policy" by granting an interest in a defendant's property which the plaintiff does not currently possess) (citing *Grupo Mexicano*, 527 U.S. at 323).

had failed in his proof and denied the request for a pre-judgment attachment. The court did grant a preliminary injunction as to *particular properties* in which the estate asserted an equitable interest under an alter ego theory, upon finding that the elements of Fed. R. Civ. P. 65 were satisfied, and that *Grupo Mexicano* did not apply because the trustee was seeking *equitable remedies* rather than money damages.  Here, in contrast, the Foreign Representative's own declaration and Motion make clear that the Ex Parte Order is in furtherance of a claim to hold Respondents "liable for damages," and does not assert an ownership interest in any particular properties but rather seeks the freezing of "cash (R$141,143,139.86) and all other assets of the defendants…".

In *In re Sledziejowski*, the temporary restraining order and preliminary injunction at issue were directed to preventing the defendants from transferring, encumbering or disposing of "assets of the Debtor's estate." 533 B.R. 408, 424 (Bankr. S.D.N.Y. 2015).   In contrast, the present Ex Parte Order is not directed to any property of the Debtors' bankruptcy estate, but rather the Respondents' property.

Similarly, the cases cited by the Foreign Representative to support that preliminary injunctions are permissible in actions for alter ego or substantive consolidation are likewise distinguishable.  The Foreign Representative cites *Wells Fargo Bank NA v. Wyo Tech Inv. Grp., LLC*, 385 F. Supp. 3d 863 (D. Ariz. 2019) for the proposition that "alter ego cases routinely uphold the restraint of [a third party's] bank account merely on the allegation that the corporate veil between the third party and the judgment debtor ought to be pierced."  However, that citation is misleading in that both the case, and the law review article it

cites, refer to a particular New York statutory "restraining notice" provision – NY CPLR § 5222 – and not to any generally applicable principle of law.  Moreover, *Iantosca v. Step Plan Servs., Inc.* is inapplicable because it involved judgment creditors asserting claims to settlement funds which they contended "properly belong to one or more the named defendants who are liable to the creditors under the . . . judgment."  604 F.3d 24, 33 (1st Cir. 2010).  Here, there is no judgment against the Respondents.

Another case cited by the Foreign Representative, *Seide v. Crest Color, Inc.*, 835 F. Supp. 732 (S.D.N.Y. 1993), was a *post-judgment effort* to enforce the judgment against an asserted alter ego, which the court held appropriate only upon a showing that the defendant intended to frustrate any judgment by transferring assets out of the jurisdiction.[9]

There is no support for the Foreign Representative's proposition that a U.S. bankruptcy trustee would be entitled to a pre-judgment freeze of non-debtor assets based on a claim seeking to hold the non-debtor liable for monetary damages, as required to obtain relief under 11 U.S.C. §1521.  As recognized by *Grupo Mexicano* and argued by the Objectors, such relief is manifestly contrary to the fundamental protection of the substantive rights of property owners under longstanding judicial precedent.

     **e.  The Ex Parte Order Does Not Grant an Injunction Per Se, it Only Permits the Foreign Representative to Seek an Injunction in the United States**

---

[9] *Seide* also was decided prior to *Grupo Mexicano*, the holding of which would have precluded the court's reliance on Rule 65 to afford injunctive relief to preserve the collectability of a money judgment.

Even if the Court granted comity to the Ex Parte Order, it would merely permit the Foreign Representative to move for an injunction, rather than enforce an asset freeze.  At the Hearing, counsel to the Foreign Representative argued that the Court should grant comity to the Ex Parte Order and thereby recognize and approve all provisions therein, including the grant of an asset freeze in the United States with respect to the Respondents.

However, in describing the application of the Ex Parte Order abroad, the Brazilian Bankruptcy Court states that:

> In relation to procedures abroad, ***I authorize the filing***, by the Bankruptcy Estate, of the ***appropriate and necessary procedures, including in the United States of America, so that the decisions handed down in the Brazilian Courts are recognized and complied with, as well as the adoption of procedures that may be necessary***, ***so that the order of preliminary attachment and freezing of cash*** (R$141,143,139.86) ***and all other assets of the defendants***, including the trademarks they own, ***is also complied with by the respectable Foreign Jurisdiction*** in relation to assets and valuables under the jurisdiction of those countries.

(ECF #15-1 p. 4) (emphasis added).

While the Court is cognizant of discrepancies with translation, as the Court stated at the Hearing, the Court's interpretation is that the Ex Parte Order simply permits the Foreign Representative to seek to extend the relief of the order in the United States by taking the "appropriate and necessary procedures." The Ex Parte Order is not in itself an injunction *per se* that automatically should apply as the operative document in the United States.  As such, the Foreign Representative would need to file "appropriate and necessary procedures" in the United States, such as a complaint ultimately supported by evidence, establishing that a pre-judgment asset freeze is appropriate.  As a result, even if

the Court were inclined to grant the Motion, this would only provide the opportunity for the Foreign Representative to seek an asset freeze in the United States. As the Court already declined to give comity to the Ex Parte Order due to lack of personal jurisdiction, the Court does not need to consider whether, if an asset freeze were requested by the Foreign Representative, the asset freeze would be granted.[10]

###    f.    The Ex Parte Order is Not Entitled to Comity Because it is Not Final

The Court also declines to give comity to the Ex Parte Order because it is a non-final order. Generally, non-final orders of foreign courts are not subject to comity, which is typically only extended to final judgments. *Cf. Hilton*, 159 U.S. at 158 (holding that comity is appropriate in circumstances where "there has been opportunity for a full and fair trial abroad before a competent jurisdiction" among other attributes). This rule has even greater applicability where the order is entered ex parte.

The Foreign Representative argues that "American courts have also afforded comity to *ex parte* interim injunctions," citing some intermediate Florida state court decisions. But as the Florida Third District Court of Appeal notes in *Amezcua v. Cortez*, 314 So. 3d 666 (Fla. 3d DCA 2021), these cases are applying state law principles of comity, not the "federal doctrine of comity" established by *Hilton*. *Amezcua*, 314 So. 3d at 669 n. 2. Under the federal doctrine, as noted above, comity is generally not extended to non-final, non-merits orders.

---

[10] There are tremendous constitutional and procedural hurdles to any such relief, all of which hurdles the Foreign Representative would have to address as part of seeking a pre-judgment asset freeze.

Accordingly, these Florida state court cases have no bearing on whether a federal court should enforce a foreign interim injunction pursuant to Chapter 15 of the Bankruptcy Code.[11]

### g. Enforcement of the Ex Parte Order Would Offend United States Public Policy

Section 1506 of the Bankruptcy Code sets forth an overriding public policy exception and provides that a court may refuse to take an action under Chapter 15 if such action "would be manifestly contrary to the public policy of the United States." 11 U.S.C. §1506.  The public policy exception applies "where the procedural fairness of the foreign proceeding is in doubt or cannot be cured by the adoption of additional protections" or where recognition "would impinge severely a U.S. constitutional or statutory right." *In re Qimonda AG Bankr. Litig.,* 433 B.R. 547, 570 (E.D. Va. 2010). As discussed above, the Ex Parte Order violates basic public policies of the United States, that is  (a) that personal jurisdiction over parties may not be exercised without alleging and demonstrating their minimum contacts with the forum; and (b) that, with very limited exception, the assets of U.S. citizens and companies may not be frozen prior to judgment pending the adjudication of a claim for money damages.

---

[11] In *Amezcua*, the Florida Third District Court of Appeal's extension of comity to non-final orders, in reliance on Restatement (Second) Conflict of Laws §§92 and 98, appears to disregard §107 of the same treatise, which provides that "A judgment will not be recognized or enforced in other states insofar as it is not a final determination under the local law of the state of rendition."  It is also inconsistent with the Florida Supreme Court's ruling in *Ogden v. Ogden*, 33 So. 2d 870 (Fla. 1947), which refused to give comity to a non-final ruling in an English divorce action. Indeed, the concurrence in *Nahar v. Nahar*, 656 So. 2d 225, 236 (Fla. 3d DCA 1995), described the court's opinion as "creating a new rule of comity which is contrary to the established law and is based on a misunderstanding of the Restatement (Second) of Conflict of Laws," noting the conflict with *Ogden* and the failure to consider §107.

The Court further declines to give comity to the Ex Parte Order because it requires an indefinite pre-judgment asset seizure without any support for the underlying claims or requisite minimum contacts.  Recognizing a foreign ex parte asset freeze order against the assets of U.S. citizens when there is no factual basis to do so is manifestly contrary to the public policy of  the United States.

## **CONCLUSION**

For the foregoing reasons, the Motion is denied. The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.  The Court retains exclusive jurisdiction with respect to all matters arising from or related to implementation, interpretation, and enforcement of this Order.

# # #

Copies furnished to:

Justin B. Elegant, Esq.
BERGER SINGERMAN LLP
*Counsel for TOG Brazil Holdings, Inc. and*
*Mike Hahn*

David L. Rosendorf, Esq.
KOZYAK TROPIN & THROCKMORTON, LLP
*Co-counsel for Rakuten USA Inc. and*
*Reginald Rasch*

Gary Eisenberg, Esq.
PERKINS COIE
*Co-counsel for Rakuten USA Inc. and*
*Reginald Rasch*

Nyana Abreu Miller, Esq.
SEQUOR LAW, P.A.
*Counsel to the Foreign Representative*

*Attorney Rosendorf  is directed to serve a copy of this Order on interested parties who do not receive service by CM/ECF, and file a proof of such service within two (2) business days from entry of the Order.*